**ORAL ARGUMENT NOT YET SCHEDULED**

No. 21-5083

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

JEAN-GABRIEL BERNIER,

Plaintiff-Appellee,

v.

JEFF ALLEN, Chief Physician, FBOP,

Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRIEF FOR THE APPELLANT

_____

> BRIAN M. BOYNTON
>  Acting Assistant Attorney General
>
> BARBARA L. HERWIG
>  (202) 514-5425
> EDWARD HIMMELFARB
>  (202) 514-3547
>  Attorneys, Appellate Staff
>  Civil Division, Room 7541
>  Department of Justice
>  950 Pennsylvania Ave., N.W.
>  Washington, D.C.  20530

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## PARTIES AND AMICI

The defendant-appellant is Dr. Jeff Allen, Medical Director at the Bureau of Prisons.  The plaintiff-appellee is Jean-Gabriel Bernier.

There are no amici.

## RULING UNDER REVIEW

The ruling at issue is the order of the district court (Amit P. Mehta, U.S.D.J.), entered on February 8, 2021, denying qualified immunity to Dr. Allen.  The order is unpublished.

## RELATED CASES

There are no other related cases currently pending in this Court or in any other court of which counsel are aware.

Respectfully submitted,

/s/     Edward Himmelfarb

_____
Edward Himmelfarb
Attorney for the Appellant

**TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

GLOSSARY ............................................................................................................vi

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION.........................................................................3

STATEMENT OF THE ISSUES..............................................................................3

STATUTES AND REGULATIONS.........................................................................4

STATEMENT OF THE CASE.................................................................................4

    A.    The District Court Grants Qualified Immunity But Later Changes Its Mind.............................................................................4

    B.    The First Amended Complaint............................................................6

    C.    The District Court Changes Its Mind Again And Grants Qualified Immunity ................................................................................7

    D.    The Proposed Second Amended Complaint .......................................8

    E.    The District Court Changes Its Mind Once More................................9

    F.    The Order On Appeal Denying Qualified Immunity ..........................10

SUMMARY OF ARGUMENT ...............................................................................11

STANDARD OF REVIEW .....................................................................................13

ARGUMENT ...............................................................................................14

THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO BOP'S HIGHEST-RANKING MEDICAL OFFICER BASED ON TWO CONCLUSORY ALLEGATIONS THAT CONTRADICTED OTHER ALLEGATIONS IN THE COMPLAINT AS WELL AS ITS EXHIBITS ................................................................14

A.    Iqbal And Twombly Require A Plaintiff To Offer Non-Conclusory Allegations That Do Not Contradict The Complaint And Exhibits Attached To It ................................................14

B.    The Two Conclusory Allegations On Which The District Court Based Its Denial Of Qualified Immunity Affirmatively Contradict Other Allegations Of The Complaint As Well As The Exhibits To The Complaint ................................................17

    1.    Dr. Allen Is Entitled To Qualified Immunity On Bernier's BOP Protocol Claim ................................................17

    2.    Dr. Allen Is Also Entitled To Qualified Immunity On Bernier's Claim Predicated On The Conclusory Allegation That Dr. Allen Had Subjective Knowledge Of The FibroSure Results ................................................24

CONCLUSION ...............................................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**<u>Cases:</u>**                                                                                                 **<u>Page(s)</u>**

<u>Anderson</u> v. <u>District of Columbia</u>, 810 Fed. Appx. 4 (D.C. Cir. 2020) ...............31

<u>Ashcroft</u> v. <u>al-Kidd</u>, 563 U.S. 731 (2011) .......................................................15

*<u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009) ............. 2, 3, 13, 14, 15, 16, 20, 25, 28, 29

<u>Atherton</u> v. <u>District of Columbia Office of Mayor</u>, 706 F.3d 512
        (D.C. Cir. 2013) ...............................................................................15

<u>Atkins</u> v. <u>Parker</u>, 972 F.3d 734 (6th Cir. 2020), <u>cert. denied</u>, No. 20-941,
        ___ S. Ct. ___, 2021 WL 1520798 (U.S. Apr. 19, 2021).............................19

<u>Baker</u> v. <u>District of Columbia</u>, 326 F.3d 1302 (D.C. Cir. 2003)...........................25

<u>Bame</u> v. <u>Dillard</u>, 637 F.3d 380 (D.C. Cir. 2011) ...........................................13, 15

<u>Barnes</u> v. <u>Fedele</u>, 813 Fed. Appx. 696, 700 (2d Cir.), <u>cert. denied</u>,
        141 S. Ct. 884 (2020).......................................................................24

<u>Barr</u> v. <u>Pearson</u>, 909 F.3d 919 (8th Cir. 2018) .....................................................31

*<u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544 (2007) ...... 2, 13, 14, 15, 16, 20, 25

<u>Bernier</u> v. <u>Trump</u>, 242 F. Supp. 3d 31 (D.D.C. 2017),
        <u>vacated in part on recon.</u>, 299 F. Supp. 3d 150 (D.D.C. 2018).......................5

<u>Bernier</u> v. <u>Trump</u>, 299 F. Supp. 3d 150, 157 (D.D.C. 2018)...................................5

<u>Bivens</u> v. <u>Six Unknown Named Agents of Fed. Bureau of Narcotics</u>,
        403 U.S. 388 (1971)........................................................................1, 5

<u>Brosseau</u> v. <u>Haugen</u>, 543 U.S. 194 (2004) (<u>per</u> <u>curiam</u>) ......................................14

<u>Campbell</u> v. <u>Kallas</u>, 936 F.3d 536 (7th Cir. 2019) ...............................................31

_____
\*      Authorities on which we chiefly rely are marked with an asterisk.

<u>Coburn</u> v. <u>Evercore Tr. Co., N.A.</u>, 844 F.3d 965 (D.C. Cir. 2016)........................16

<u>Crawford-El</u> v. <u>Britton</u>, 523 U.S. 574 (1998)........................................................25

<u>Cunningham</u> v. <u>Sessions</u>, No. 16-cv-1292, 2017 WL 2377838
    (D.S.C. May 31, 2017) ........................................................................19

<u>Dulany</u> v. <u>Carnahan</u>, 132 F.3d 1234 (8th Cir. 1997) ..................................31

<u>Elder</u> v. <u>Holloway</u>, 510 U.S. 510 (1994) ..................................................13

<u>Erickson</u> v. <u>Pardus</u>, 551 U.S. 89 (2007) (<u>per</u> <u>curiam</u>) ............................28

<u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97 (1976) ....................................18, 25, 31

<u>Farmer</u> v. <u>Brennan</u>, 511 U.S. 825 (1994) .............................................25

<u>Hoffer</u> v. <u>Secretary, Fla. Dep't of Corr.</u>, 973 F.3d 1263 (11th Cir. 2020).............19

<u>Holland</u> v. <u>Goord</u>, 758 F.3d 215 (2d Cir. 2014) ..........................................24

<u>In re Federal Bureau of Prisons' Execution Protocol Cases</u>, 980 F.3d 123
    (D.C. Cir. 2020)................................................................................16

<u>Johnson</u> v. <u>Stephan</u>, 6 F.3d 691 (10th Cir. 1993) ....................................31

<u>Jones</u> v. <u>Kirchner</u>, 835 F.3d 74 (D.C. Cir. 2016)........................................15

<u>Kaempe</u> v. <u>Myers</u>, 367 F.3d 958 (D.C. Cir. 2004) ............................13, 16

<u>Kisela</u> v. <u>Hughes</u>, 138 S. Ct. 1148 (2018) ............................................14

<u>Losey</u> v. <u>Warden</u>, 521 Fed. Appx. 717 (11th Cir. 2013) ..........................29

<u>Mitchell</u> v. <u>Forsyth</u>, 472 U.S. 511 (1985)................................................14

<u>Morris</u> v. <u>Livingston</u>, 739 F.3d 740 (5th Cir. 2014)..................................18

Morrison v. Federal Bureau of Prisons, No. 19-cv-1838,
  2021 WL 1209210 (D.D.C. Mar. 30, 2021) ............................................. 31-32

Mullenix v. Luna, 577 U.S. 7 (2015)...................................................15

Nieves v. Bartlett, 139 S. Ct. 1715 (2019)............................................25

*Owens v. BNP Paribas, S.A., 897 F.3d 266 (D.C. Cir. 2018).........3, 13, 16, 20, 23

Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997)...................................18

Roe v. Elyea, 631 F.3d 843 (7th Cir. 2011).......................................18, 19

Saucier v. Katz, 533 U.S. 194 (2001) ....................................................14

White v. Farrier, 849 F.2d 322 (8th Cir. 1988).......................................31

Wilson v. Layne, 526 U.S. 603 (1999) .........................................14, 15, 24

Zingg v. Groblewski, 907 F.3d 630 (1st Cir. 2018) ...................... 18-19

## Constitution:

Eighth Amendment ........................................... 3, 5, 9, 12, 17, 24, 29, 31

## Statutes:

28 U.S.C. 1291.................................................................................3
28 U.S.C. 1331.................................................................................3
28 U.S.C. 1343(a)(3)..........................................................................3
28 U.S.C. 2107(b) .............................................................................3

## Rules:

Rule 4(a)(1)(B), Fed. R. App. P.............................................................3

## Miscellaneous:

BOP, Population Statistics, https://go.usa.gov/xFT79 ...........................17

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| AASLD * | American Association for the Study of Liver Disease |
| APRI | Aspartate-aminotransferase to Platelet Ratio Index |
| BOP | Federal Bureau of Prisons |
| IDSA * | Infectious Diseases Society of America |

* NOTE:  In the majority of instances, this brief refers to the AASLD and the IDSA collectively as the "medical organizations."

# INTRODUCTION

This is a <u>Bivens</u> action[1] brought by Jean-Gabriel Bernier, a former federal prisoner who was treated in prison for – and admittedly cured of – Hepatitis C, an infection caused by a virus affecting the liver, which can lead to cirrhosis, or scarring of the liver.

Bernier alleges that a year and half before his successful treatment, the defendant, Dr. Jeff Allen, Medical Director at the Federal Bureau of Prisons (BOP), denied his request for Hepatitis C treatment with a new drug called Harvoni under a BOP protocol that prioritized Hepatitis C treatment of prisoners for those with the greatest need.  He contends that this constituted deliberate indifference under the Eighth Amendment.

The litigation in district court has taken a zigzag path.  The district court initially granted qualified immunity to Dr. Allen in 2017, but then reversed course in 2018 and vacated its earlier decision.  When Bernier filed an amended complaint, the court again granted qualified immunity in 2019.  In doing so, the court observed that the BOP protocol was similar to the protocol of two medical organizations that was in effect as recently as two months before Dr. Allen turned down Bernier's request for immediate treatment with Harvoni.  The medical organizations' revised

---

[1]   <u>See</u> <u>Bivens</u> v. <u>Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

protocol, which called for treatment for nearly all persons with Hepatitis C, recognized that prisons may need to handle treatment issues differently. The court also noted that the actual application seeking treatment for Bernier with Harvoni, which was attached to the complaint, showed that Dr. Allen was not aware of Bernier's earlier blood-test results from his previous incarceration in state prison.

The following year, however, the district court changed its mind again, granting reconsideration of that decision when, in response to the court's grant of qualified immunity, Bernier proposed to add two allegations to a second amended complaint: (i) that the BOP protocol was based entirely on cost without medical justification and (ii) that Dr. Allen was subjectively "aware" of Bernier's previous blood test scores. In light of these two new allegations, the court allowed Bernier to file his second amended complaint, despite the fact that those two allegations are conclusory and contradict other allegations of the proposed complaint, as well as its exhibits.

In February 2021, after Bernier filed his second amended complaint, Dr. Allen moved to dismiss based on qualified immunity, but the district court denied the motion, based on the two new allegations.

The district court's denial of qualified immunity was wrong. The Supreme Court's decisions in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), as well as this Court's case law, require plausible

allegations of a constitutional violation in this case.  Conclusory allegations that contradict the complaint and its exhibits do not support a plausible claim against Dr. Allen.  See Owens v. BNP Paribas, S.A., 897 F.3d 266, 272-73 (D.C. Cir. 2018).

## STATEMENT OF JURISDICTION

The plaintiff filed this suit in district court, asserting jurisdiction under 28 U.S.C. 1331 and 28 U.S.C. 1343(a)(3).  The district court had subject-matter jurisdiction under 28 U.S.C. 1331.  The district court's order denying Dr. Allen's motion to dismiss (or, in the alternative, for summary judgment) based on qualified immunity was entered on February 8, 2021.  Dr. Allen filed a notice of appeal on April 8, 2021, which was timely under 28 U.S.C. 2107(b) and Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure. This Court has jurisdiction under 28 U.S.C. 1291 to review the denial of qualified immunity on a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 671-72 (2009).

## STATEMENT OF THE ISSUE

Whether the district court, having previously granted qualified immunity to Dr. Jeff Allen, the Medical Director of the Bureau of Prisons, on a claim of deliberate indifference under the Eighth Amendment, erred in changing course and denying qualified immunity to Dr. Allen based on two new conclusory allegations in the second amended complaint that affirmatively contradict other allegations of the complaint and the exhibits to the complaint.

**STATUTES AND REGULATIONS**

There are no statutes or regulations that are pertinent to this case.

**STATEMENT OF THE CASE**

The plaintiff, Jean-Gabriel Bernier, was convicted in 1990 on charges of armed bank robbery, use of a firearm during a crime of violence, and unlawful possession of a firearm. According to his complaint in this case, Bernier – after serving some time in federal prison – served a sentence in state prison and was transferred back to federal prison in 2015. J.A. 109-110 (Second Am. Compl. ¶ 15). BOP advises that Bernier was released from its custody on September 3, 2020.

### A. The District Court Grants Qualified Immunity But Later Changes Its Mind.

Bernier initially filed his complaint pro se, J.A. 17-34, alleging, in relevant part, that he had been diagnosed with Hepatitis C before entering BOP custody in 2015, and that a blood test known as FibroSure, which had been administered to him while in state prison, showed that he suffered from cirrhosis of the liver. He alleged that, while in BOP custody in December 2015, he applied to be treated with Harvoni, a relatively new antiviral medication that the Food and Drug Administration had approved the previous year for use in treating patients with Hepatitis C. Bernier claimed that Dr. Allen improperly denied him treatment with Harvoni in reliance on Bernier's "low APRI [Aspartate-aminotransferase to Platelet Ratio Index] number" obtained after he was transferred to BOP, and on "outdated biopsy results, rather

than [his] more recent FibroSure scores." <u>Bernier</u> v. <u>Trump</u>, 242 F. Supp. 3d 31, 36 (D.D.C. 2017), <u>vacated in part on recon.</u>, 299 F. Supp. 3d 150 (D.D.C. 2018). Aspartate-aminotransferase to Platelet Ratio Index is a "test whose numerical score is used to detect cirrhosis." <u>Id.</u> at 36 n.3.

The district court initially granted qualified immunity to Dr. Allen, holding that there was no clearly established law to the effect that "denying a prisoner Harvoni to treat Hepatitis C based only on his APRI score violates the Eighth Amendment." <u>Bernier</u>, 242 F. Supp. 3d at 39. The court, however, allowed Bernier's claim for injunctive relief to proceed. <u>Id.</u> at 40-42. And it announced it would appoint counsel for Bernier on that claim. <u>Id.</u> at 45.

A year later, when Bernier was represented by counsel, the district court vacated its grant of qualified immunity to Dr. Allen, agreeing with Bernier that the court had "framed the asserted right at issue too narrowly in its previous decision * * * by defining the right in accordance with 'the very action in question.'" <u>Bernier</u> v. <u>Trump</u>, 299 F. Supp. 3d 150, 157 (D.D.C. 2018). The court encouraged Bernier to file an amended complaint and serve it on Dr. Allen if he wished to pursue his <u>Bivens</u> claim.[2]

---

[2] The court dismissed the <u>Bivens</u> claim without prejudice for failure to serve Dr. Allen properly. 299 F. Supp. 3d at 159. It dismissed the injunctive claim as moot in light of Bernier's successful treatment in 2017. <u>Id.</u> at 155-56.

**B.	The First Amended Complaint.**

Bernier and his appointed counsel filed a first amended complaint, which followed the outline of the original complaint. Bernier alleged that Dr. Allen had improperly denied him treatment with Harvoni. J.A. 40-42 (First Am. Compl. ¶¶ 17-21). At the time Bernier applied, BOP had a prioritization protocol under which only the prisoners with the most severe cases of Hepatitis C were approved for treatment with direct-acting antiviral drugs similar to Harvoni. J.A. 42 (First Am. Compl. ¶ 22). Bernier admitted that BOP's protocol was "analogous" to a protocol originally recommended by two medical organizations – the American Association for the Study of Liver Disease (AASLD) and the Infectious Diseases Society of America (IDSA), J.A. 46-47 (First Am. Compl. ¶ 42) – but he alleged that those two medical organizations had shifted their approach in October 2015, two months before Bernier applied for Harvoni treatment, to recommend instead that all persons with chronic Hepatitis C be treated with antiviral drugs. J.A. 47 (First Am. Compl. ¶ 43).[3]

---

[3]	Bernier attached the announcement of the revised protocol of these two medical organizations, issued in October 2015, to his first amended complaint. Though the announcement called for treatment for "nearly all" persons with Hepatitis C, J.A. 63 (First Am. Compl. Exh. D, at 1), it "was not, as Plaintiff claims, 'unequivocal[].'" J.A. 83 (Op., Aug. 22, 2019, at 7) (brackets in original). Instead, it explicitly recognized limitations on its recommendation of treatment for all: "Additionally, in certain settings [including prisons] there remain factors that impact access to medications and the ability to deliver them to patients. In these settings, practitioners may still need to decide which patients should be treated first." J.A. 63 (First Am. Compl. Exh. D, at 1); see also J.A. 60 (First Am. Compl. Exh. C, at 1)

Bernier's theory in the first amended complaint was that when he applied for treatment with Harvoni in December 2015, the defendant, Dr. Jeff Allen, was deliberately indifferent in denying Bernier's application, when the recent October 2015 recommendation by those two medical organizations was to treat nearly all persons with Hepatitis C. J.A. 47-48 (First Am. Compl. ¶¶ 43, 45, 46). In 2017, however, Bernier was deemed to be at a higher level of BOP's prioritization protocol (which had been modified in 2016 in light of the new recommendation of the medical organizations) and he underwent treatment with a 12-week regimen of Zepatier, a direct-acting antiviral medication similar to Harvoni. J.A. 42-43 (First Am. Compl. ¶ 23). Bernier alleged that this treatment cured him of Hepatitis C. J.A. 43 (First Am. Compl. ¶ 24).

Bernier sought damages against Dr. Allen in his personal capacity for what he claimed was deliberate indifference to his serious medical needs during the period between the denial of treatment in December 2015 and the successful treatment in 2017.

### C. The District Court Changes Its Mind Again And Grants Qualified Immunity.

In August 2019, the district court granted qualified immunity to Dr. Allen

---

("Because of the cost of the new drugs, or regional availability of appropriate health care providers, a practitioner may still need to decide which patients should be treated first.").

based on the lack of plausible allegations in the first amended complaint. The court predicated its decision on three conclusions. First, the revised recommendation of the two medical organizations in October 2015 was not absolute but rather was qualified with respect to prison populations, which it recognized as a "unique" population. J.A. 83-84 (Op., Aug. 22, 2019, at 7-8). Second, the revised recommendation was only two months old at the time Bernier applied for Harvoni treatment, and BOP did respond to the changed recommendation in 2016, though not within two months. J.A. 84-86 (Op., Aug. 22, 2019, at 8-10). Third, Bernier did not plead that Dr. Allen knew about the FibroSure results. Rather, noted the court, "the one-page application for treatment that Allen received in December 2015, which Plaintiff attaches to his Amended Complaint, says nothing about Fibrosure results." J.A. 86 (Op., Aug. 22, 2019, at 10). Thus, on these allegations, the district court held that the amended complaint did not plead plausible allegations of deliberate indifference on Dr. Allen's part. J.A. 87 (Op., Aug. 22, 2019, at 11).

### D. The Proposed Second Amended Complaint.

Bernier then moved to alter or amend the judgment, attaching a proposed second amended complaint. The proposed complaint was almost exactly the same as the first amended complaint, but Bernier offered a different theory of deliberate indifference, adding two new allegations. First, he alleged that Dr. Allen's denial of Bernier's request for treatment with Harvoni had been based on BOP's protocol,

which Bernier now alleged was created "in order to minimize the high cost attending the administration of drugs such as Harvoni, not on the basis of any medical justification." J.A. 112 (Second Am. Compl. ¶ 22). And second, he added an allegation that Dr. Allen actually was "aware" of the results of three FibroSure tests, taken during Bernier's time in state custody, which he alleged were indicative of cirrhosis of the liver. J.A. 111-112 (Second Am. Compl. ¶ 21). Bernier's <u>first</u> amended complaint had alleged only that the BOP Clinical Director – the official who had submitted the application to Dr. Allen (and not a defendant in the case) – was aware of the FibroSure results. J.A. 41-42 (First Am. Compl. ¶ 21).

### E.    The District Court Changes Its Mind Once More.

The district court again changed course, granting Bernier's motion to alter or amend in July 2020. The court held that the two new allegations in the proposed second amended complaint plausibly alleged a clearly established Eighth Amendment violation.

With respect to the allegation that the BOP protocol was based solely on cost, and not on any medical justification, the court concluded that this allegation was plausible when "[c]oupled with the alleged facts that Harvoni costs nearly $100,000 per course of treatment, and that Defendant knowingly disregarded Plaintiff's Fibrosure test results which would have seemingly entitled him to treatment even under the BOP's own protocol." J.A. 99 (Op., July 20, 2020, at 11) (citation omitted).

With respect to the second new allegation that Dr. Allen was aware of Bernier's FibroSure results, the court concluded that if Dr. Allen had known and considered the FibroSure results, "it is plausible that Plaintiff would have qualified for treatment under Priority 1 – the 'highest priority of treatment' in the BOP's protocol." J.A. 101 (Op., July 20, 2020, at 13). The court admitted that Bernier, who was represented by counsel, "does not expressly argue that he was entitled to a higher priority level based on his Fibrosure test results," but the court "grant[ed] Plaintiff the benefit of the doubt that Defendant was on notice that a higher priority treatment category was required." J.A. 101 n.5 (Op., July 20, 2020, at 13 n.5).

The district court accordingly altered the judgment dismissing the complaint based on qualified immunity and permitted Bernier to file the second amended complaint. J.A. 104-105 (Op., July 20, 2020, at 16-17).

**E.     The Order On Appeal Denying Qualified Immunity.**

Following the decision granting reconsideration based on the proposed second amended complaint, Bernier actually filed that complaint. Dr. Allen then moved to dismiss or, alternatively, for summary judgment. On February 8, 2021, the district court denied this motion in a brief order, holding that its previous decision regarding the plaintiff's proposed second amended complaint had already disposed of all the arguments raised in Dr. Allen's motion regarding the second amended complaint as filed. J.A. 148-149 (Order, Feb. 8, 2021, at 3-4).

**SUMMARY OF ARGUMENT**

The district court's decision denying qualified immunity to Dr. Allen was incorrect and should be vacated and remanded with instructions to dismiss the second amended complaint with prejudice.

The only relevant difference between the first amended complaint, on which the district court granted qualified immunity to Dr. Allen, and the second amended complaint, on which the court denied qualified immunity in the order under review here is that the second amended complaint includes two new conclusory allegations. Those two new allegations are (a) that the BOP protocol under which Dr. Allen made the decision not to authorize treatment with Harvoni was based entirely on cost and had no medical justification; and (b) that Dr. Allen was "aware" of Bernier's FibroSure blood test results from the time when Bernier was serving a sentence in state prison. Because both of these allegations are conclusory and conflict with other allegations of Bernier's complaint and with the exhibits he attaches to it, the district court erred in assuming their truth on Dr. Allen's motion to dismiss.

The first allegation – that the BOP protocol was based entirely on cost without any medical justification – is contradicted by the portion of the BOP protocol attached to Bernier's complaint, which describes in considerable detail the medical considerations that were used in determining how to prioritize inmates for treatment.

11

Bernier also alleges that the original protocol issued by the two medical organizations was "analogous" to the BOP protocol, and unless those medical organizations had no medical justification for their own protocol (which Bernier does not allege), the allegation that the "analogous" BOP protocol had no medical justification conflicts with that part of the complaint. And even the revised protocol from the medical organizations, which Bernier also attached to his complaint, explicitly states that prioritization would have to continue in certain settings, including prisons.

The second allegation – that Dr. Allen was subjectively "aware" of Bernier's FibroSure test results from state prison – is conclusory, because Bernier offers no objective basis for his inference about Dr. Allen's subjective awareness. It also conflicts with the application for treatment submitted to Dr. Allen, which Bernier attached to his complaint. That application mentions (i) Bernier's recent APRI (Aspartate-aminotransferase to Platelet Ratio Index) score, (ii) a recent endoscopy that was normal, and (iii) an older liver biopsy result. It nowhere mentions a FibroSure result from state prison. And even if it were properly alleged that Dr. Allen was aware of the FibroSure results, it would still have been a matter of medical judgment whether Bernier should have been given a higher prioritization under the BOP protocol. A dispute over medical judgment on how to apply BOP policy does not support an individual-capacity claim of deliberate indifference under the Eighth Amendment.

Because both new allegations in the second amended complaint are conclusory and conflict with the complaint or exhibits to the complaint, they should not have been accepted as true under <u>Iqbal</u> and <u>Twombly</u>. And because the second amended complaint does not plead a plausible individual-capacity claim against Dr. Allen, despite the presence of those allegations, qualified immunity should have been granted.

## STANDARD OF REVIEW

The denial of qualified immunity is reviewed <u>de novo</u>. <u>Bame</u> v. <u>Dillard</u>, 637 F.3d 380, 384 (D.C. Cir. 2011) ("The only issue on appeal is whether Dillard is entitled to qualified immunity, which issue we resolve de novo.") (citing <u>Elder</u> v. <u>Holloway</u>, 510 U.S. 510, 516 (1994)).

In reviewing the disposition of a motion to dismiss, this Court "follows a familiar process," determining whether the complaint "'contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" <u>Owens</u> v. <u>BNP Paribas, S.A.</u>, 897 F.3d 266, 272 (D.C. Cir. 2018) (quoting <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007))). When following that process, the Court does <u>not</u> "'accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'" <u>Id.</u> at 272-73 (quoting <u>Kaempe</u> v. <u>Myers</u>, 367 F.3d 958, 963 (D.C. Cir. 2004)).

ARGUMENT

**THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO BOP'S HIGHEST-RANKING MEDICAL OFFICER BASED ON TWO CONCLUSORY ALLEGATIONS THAT CONTRADICTED OTHER ALLEGATIONS IN THE COMPLAINT AS WELL AS ITS EXHIBITS.**

> **A.** **<u>Iqbal</u> And <u>Twombly</u> Require A Plaintiff To Offer Non-Conclusory Allegations That Do Not Contradict The Complaint And Exhibits Attached To It.**

1. This is an appeal of an order denying qualified immunity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wilson</u> v. <u>Layne</u>, 526 U.S. 603, 614 (1999) (quoting <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)); <u>see also</u> <u>Kisela</u> v. <u>Hughes</u>, 138 S. Ct. 1148, 1152 (2018). But qualified immunity is not just a defense to liability; it "is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell</u> v. <u>Forsyth</u>, 472 U.S. 511, 526 (1985)).

"'Because the focus [in qualified immunity] is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" <u>Kisela</u>, 138 S. Ct. at 1152 (quoting <u>Brosseau</u> v. <u>Haugen</u>, 543 U.S. 194, 198 (2004) (<u>per</u> <u>curiam</u>)). "[E]xisting precedent must have

14

placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (emphasis added). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (internal quotation marks omitted). "A right is 'clearly established' if precedent from a controlling authority or 'a robust consensus of cases of persuasive authority' put the constitutional question beyond debate." Jones v. Kirchner, 835 F.3d 74, 84 (D.C. Cir. 2016) (quoting al-Kidd, 563 U.S. at 742); see Atherton v. District of Columbia Office of Mayor, 706 F.3d 512, 515 (D.C. Cir. 2013) (this Court "look[s] to 'cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view – if there is one'") (quoting Bame v. Dillard, 637 F.3d 380, 384 (D.C. Cir. 2011)). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). And an official is entitled to qualified immunity when he relies on agency policy, so long as it is not clearly established that the policy is unconstitutional. See Wilson v. Layne, 526 U.S. at 617.

2.      To survive a motion to dismiss based on qualified immunity, the complaint must allege a "plausible claim for relief," Iqbal, 556 U.S. at 679, that is, it must provide "plausible grounds" that the plaintiff's clearly established rights were violated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). In other

words, "the complaint must include factual allegations that, when taken as true, rise above a 'speculative level.'" Coburn v. Evercore Tr. Co., N.A., 844 F.3d 965, 968 (D.C. Cir. 2016) (quoting Twombly, 550 U.S. at 555). A complaint that pleads facts that are "merely consistent" with liability "stops short of the line between possibility and plausibility." Twombly, 550 U.S. at 557; see Iqbal, 556 U.S. at 678. Moreover, even where the allegations in a complaint are consistent with unlawful conduct, a complaint is not plausible if an "obvious alternative explanation" for the conduct exists. Twombly, 550 U.S. at 567-69; see Iqbal, 556 U.S. at 682.

"[M]ere conclusory statements" are not enough. Iqbal, 556 U.S. at 678. "[T]he conclusory nature" of a plaintiff's allegations, "rather than their extravagantly fanciful nature," is what "disentitles them to the presumption of truth." Id. at 681. While courts "must take as true all plausible factual allegations and reasonable inferences drawn from them," In re Federal Bureau of Prisons' Execution Protocol Cases, 980 F.3d 123, 131 (D.C. Cir. 2020) (emphasis added), courts do not "'accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'" Owens v. BNP Paribas, S.A., 897 F.3d 266, 272-73 (D.C. Cir. 2018) (quoting Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004)).

**B.** **The Two Conclusory Allegations On Which The District Court Based Its Denial Of Qualified Immunity Affirmatively Contradict Other Allegations Of The Complaint As Well As The Exhibits To The Complaint.**

The district court granted qualified immunity to Dr. Allen on the first amended complaint but amended its order to allow Bernier to file a proposed second amended complaint in light of two new allegations. And when Bernier filed that complaint, the district court denied qualified immunity to Dr. Allen. This was error, because both of those new allegations are conclusory, and they affirmatively contradict other allegations of the complaint and the attachments to the complaint.

**1.** **Dr. Allen Is Entitled To Qualified Immunity On Bernier's BOP Protocol Claim.**

Bernier is suing Dr. Allen, who was both the chief medical officer of the Federal Bureau of Prisons, with responsibility of overseeing medical care of approximately 200,000 federal prisoners at the time of the events in this case,[4] and the Chief of Health Programs. Bernier's second amended complaint alleges that Dr. Allen's denial of his request for treatment under the BOP protocol for treatment of Hepatitis C constituted deliberate indifference under the Eighth Amendment because that protocol, he claims, was created "in order to minimize the high cost attending the administration of drugs such as Harvoni, not on the basis of any medical

---

[4]     According to BOP, there were 205,725 federal prisoners in 2015. See BOP, Population Statistics, https://go.usa.gov/xFT79 (last visited Aug. 13, 2021).

17

justification." J.A. 112 (Second Am. Compl. ¶ 22). Bernier alleges only that Dr. Allen applied the BOP protocol in denying his application for treatment with Harvoni; he does not allege that Dr. Allen created that protocol or was otherwise personally responsible for it. And in any event, his conclusory allegation that the protocol was based solely on cost is not plausible, because it contradicts another allegation of the complaint, as well as the exhibits that Bernier attaches to the complaint.

a. While it may well be that an official who personally decides to deny treatment to an inmate without any medical justification, based solely on cost of the treatment, violates a clearly established right, see, e.g., Roe v. Elyea, 631 F.3d 843, 863 (7th Cir. 2011) ("the Constitution is violated when [administrative convenience and cost] are considered to the exclusion of reasonable medical judgment about inmate health"), the district court correctly explained that it is not clearly established that such an official violates the Constitution when he makes his decision under an agency's treatment protocol, which is based to a significant degree on medical justification and only partly on cost and availability of medication:

> "The deliberate indifference standard of Estelle," however, "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." Morris v. Livingston, 739 F.3d 740, 748 (5th Cir. 2014) (cleaned up) (quoting Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997)); see also Zingg v.

> Groblewski, 907 F.3d 630, 638 (1st Cir. 2018). "[A]dmin-
> istrative convenience and cost may be, in appropriate cir-
> cumstances, permissible factors for correctional systems
> to consider in making treatment decisions . . . ." Elyea,
> 631 F.3d at 863.

J.A. 98 (Op., July 20, 2020, at 10) (alterations in original); see also Hoffer v.

Secretary, Fla. Dep't of Corr., 973 F.3d 1263, 1276 (11th Cir. 2020); Atkins v.

Parker, 972 F.3d 734, 740 (6th Cir. 2020) ("Rather than reveal indifference,

therefore, the record supports the conclusion that – by the very sort of 'prioritization'

[for treating Hepatitis C] employed by the plaintiff's own expert, Dr. Yao, and by an

extensive latticework of procedures in support – Dr. Williams sought to employ the

finite resources at his disposal to maximize their benefit for the inmates in his care."),

cert. denied, No. 20-941, ___ S. Ct. ___, 2021 WL 1520798 (U.S. Apr. 19, 2021).

A recognition that medical judgment may properly be coupled with consider-

ation of cost and availability is especially appropriate here.  When Bernier's treat-

ment request was denied in December 2015 under the BOP protocol in effect at the

time, the medical consensus on treatment of Hepatitis C was "'rapidly evolving.'"

J.A. 85 (Op., Aug. 22, 2019, at 9) (quoting Cunningham v. Sessions, No. 16-cv-

1292, 2017 WL 2377838, at *4 (D.S.C. May 31, 2017) ("In light of the rapidly

evolving legal and medical developments in this area and the absence of any control-

ling Fourth Circuit or Supreme Court authority on the legal issue before the Court,

there is no clearly established statutory or constitutional right at this time for inmates

with chronic Hepatitis C to be treated with [direct-acting antiviral] drugs."")).

b. Thus, it is crucial to the issue of qualified immunity to determine whether Bernier's allegation plausibly supports a claim that Dr. Allen's denial of treatment under the BOP protocol was based <u>entirely</u> on cost, without <u>any</u> medical justification, or instead on a combination of the two.

Here, it is undisputed that the cost of Harvoni treatment was high, but Bernier's allegation is not just that the desired treatment was expensive. That is a given. His allegation, rather, is that the BOP protocol under which Dr. Allen denied treatment was based <u>solely</u> on cost and "not on * * * <u>any</u> medical justification." J.A. 112 (Second Am. Compl. ¶ 22) (emphasis added). This allegation that BOP protocol under which treatment was denied had no medical justification does not meet Bernier's burden to overcome the "obvious alternative explanation," <u>Twombly</u>, 550 U.S. at 567; <u>see</u> <u>Iqbal</u>, 556 U.S. at 682, that the purpose of BOP's protocol was to make treatment with direct-acting antiviral drugs available first to the inmates who were in greatest medical need. Bernier objects to his prioritization, but he never alleges that all other prisoners were being denied the expensive treatment.

Bernier's conclusory allegation flatly contradicts three exhibits to his complaint, as well as the complaint itself. <u>See</u> <u>Owens</u>, 897 F.3d at 272-73. First, Bernier's allegation contradicts Exhibits C and D to his complaint – respectively, the press release issued by the two medical organizations in October 2015, and the

organizations' new protocol for treating Hepatitis C. Those exhibits show that even the medical organizations' new protocol recommending treatment for "nearly all" persons with Hepatitis C, J.A. 133 (Second Am. Compl. Exh. D, at 1), did not take cost off the table. Indeed, the new protocol explicitly recognized a continuing need for prioritization based in part upon cost and availability: "Because of the cost of the new drugs, or regional availability of appropriate health care providers, a practitioner may still need to decide which patients should be treated first." J.A. 130 (Second Am. Compl. Exh. C, at 1). In their recommendation, the medical organizations also made it clear that "certain settings" would continue to require prioritization: "Additionally, in certain settings there remain factors that impact access to medications and the ability to deliver them to patients. In these settings, practitioners may still need to decide which patients should be treated first." J.A. 133 (Second Am. Compl. Exh. D, at 1). Those "certain settings" would include prisons. See J.A. 142 (Second Am. Compl. Exh. D, at 10) ("Incarcerated persons") ("Coordinated treatment efforts within prison systems would likely rapidly decrease the prevalence of [Hepatitis C virus] infection in this at-risk population, although research is needed in this area.").

Second, contrary to Bernier's assertion, the BOP protocol itself – several pages of which are attached to Bernier's complaint as Exhibit B – stated its medical justification and addressed at length the medical considerations that were taken into

account in determining how inmates were to be prioritized for treatment. <u>See</u> <u>generally</u> J.A. 122-128 (Second Am. Compl. Exh. B). In particular, the BOP protocol aimed to "ensure that those with the greatest need are identified and treated first," noting that "certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment." J.A. 127 (Second Am. Compl. Exh. B, at 7). To achieve this, the protocol called for an extensive baseline evaluation of inmates who had signs of Hepatitis C and suggested a variety of preventive health measures and patient education, J.A. 123-124 (Second Am. Compl. Exh. B, at 3-4); it required an assessment of hepatic cirrhosis, including determination of the inmate's APRI (Aspartate-aminotransferase to Platelet Ratio Index) score and evaluation of previous liver biopsies, J.A. 124-125 (Second Am. Compl. Exh. B, at 4-5); it called for an assessment whether an inmate's cirrhosis is compensated (better) or decompensated (worse), J.A. 125-126 (Second Am. Compl. Exh. B, at 5-6); and it addressed other kinds of interventions, J.A. 126 (Second Am. Compl. Exh. B, at 6). All of this medical evaluation would occur as a means of enabling prison officials to determine an inmate's priority for treatment. J.A. 127-128 (Second Am. Compl. Exh. B, at 7-8).

Finally, Bernier's allegation contradicts the complaint itself, where he alleges that the BOP protocol was "analogous" to the two medical organizations' earlier protocol that remained in effect until October 2015. J.A. 116-117 (Second Am.

Compl. ¶ 43). For it to be plausible that BOP's protocol had no medical justification, one would have to believe that the two medical organizations <u>also</u> established a protocol for treating Hepatitis C that had no medical justification, and Bernier, of course, does not make such a claim. To the contrary, as the district court itself pointed out, Bernier alleges that the medical organizations' earlier protocol prioritized those patients who were believed to have the greatest need, which is just what the BOP protocol said it was trying to accomplish:

> Starting in 2013, the AASLD/IDSA recommended a prioritization protocol for Hepatitis C sufferers "analogous" to the one adopted by BOP. Am. Compl. ¶ 42. Under that approach, "patients perceived to have the greatest need would be treated first." <u>Id.</u>

J.A. 84 (Op., Aug. 22, 2019, at 8); <u>see also</u> J.A. 116-117 (Second Am. Compl. ¶ 43). If the medical organizations' prioritization protocol had a medical justification – which seems quite obvious, and which Bernier concedes – it necessarily follows that the "analogous" BOP protocol also had a medical justification, as the portion of the BOP protocol that Bernier has attached to his second amended complaint makes abundantly clear. Absent some further allegation that Bernier does not and cannot make, Bernier's allegation is wholly implausible.

In short, allegations that contradict the complaint and its exhibits should not be accepted as true. <u>Owens</u>, 897 F.3d at 272-73. Under the <u>first</u> amended complaint, without the allegation that the BOP protocol was based solely on cost and had no

medical justification, the district court properly granted qualified immunity to Dr. Allen. Bernier does not allege that Dr. Allen was responsible for the BOP protocol, and his conclusory allegation about cost and medical justification does not support the district court's denial of qualified immunity. Cf. Wilson v. Layne, 526 U.S. at 617 (granting qualified immunity because "the law as to third parties accompanying police on home entries was at best undeveloped, and it was not unreasonable for law enforcement officers to look and rely on their formal ride-along policies").[5]

### 2. Dr. Allen Is Also Entitled To Qualified Immunity On Bernier's Claim Predicated On The Conclusory Allegation That Dr. Allen Had Subjective Knowledge Of The FibroSure Results.

The district court also erred in denying qualified immunity on Bernier's claim that Dr. Allen denied him treatment despite allegedly knowing about Bernier's FibroSure results from his previous incarceration in state prison.

a. An Eighth Amendment claim that a prison official is personally liable because he was deliberately indifferent to the prisoner's medical needs requires a

---

[5] "If a policy is, indeed, constitutional, state actors who enforce that policy almost always have qualified immunity because carrying out a lawful policy is reasonable. [citing Wilson v. Layne] If a policy is unconstitutional, those enforcing it may nevertheless be entitled to qualified immunity if 'a reasonable [actor] might have believed that the challenged order was lawful in light of legitimate pen[o]logical interests supporting [the policy].'" Barnes v. Fedele, 813 Fed. Appx. 696, 700 (2d Cir.) (quoting Holland v. Goord, 758 F.3d 215, 223 (2d Cir. 2014)) (first set of brackets added), cert. denied, 141 S. Ct. 884 (2020).

plausible allegation not only of the objective severity of the plaintiff's condition, which we accept as true for purposes of the appeal, but also of the defendant's subjective knowledge of the risk that the action or failure to act could lead to. A deliberate-indifference claim cannot be predicated on negligence. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Rather, "[t]o show deliberate indifference," a plaintiff must "allege that officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003); see Farmer v. Brennan, 511 U.S. 825, 837 (1994) (requiring that "the official know[] of and disregard[] an excessive risk to inmate health or safety" – i.e., that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). This reckless-disregard standard is described as "subjective recklessness as used in the criminal law." Id. at 839.

Subjective recklessness is "a state of mind [that] is 'easy to allege and hard to disprove.'" Nieves v. Bartlett, 139 S. Ct. 1715, 1725 (2019) (quoting Crawford-El v. Britton, 523 U.S. 574, 585 (1998)). That observation reinforces the need under Iqbal and Twombly for Bernier to make non-conclusory allegations that Dr. Allen was subjectively aware of Bernier's FibroSure results from state prison. But here,

his allegation that Dr. Allen was "aware" of the FibroSure results is not just conclusory; it conflicts with the application that was submitted to request treatment on his behalf, which Bernier has attached to his second amended complaint as Exhibit A. J.A. 121 (Second Am. Compl. Exh. A). As the district court held in its August 2019 opinion, the application submitted on behalf of Bernier indicated nothing about Bernier's FibroSure results from his time in state prison:

> But even if Plaintiff's Fibrosure test results pointed to a more substantial liver problem, and BOP was aware of these results, he does not allege that Allen himself knew of them. On the contrary, the one-page application for treatment that Allen received in December 2015, which Plaintiff attaches to his Amended Complaint, says nothing about Fibrosure results.

J.A. 86 (Op., Aug. 22, 2019, at 10). Instead, the application cited the more recent Aspartate-aminotransferase to Platelet Ratio Index score of 0.40, which was far below the BOP protocol's requirement of 2.0 to classify an inmate as Priority 1 or 2; it also cited a liver biopsy report from 2009 showing only stage 2 liver fibrosis, and a "normal endoscopy" from November 2015. J.A. 51 (First Am. Compl., Exh. A). In granting qualified immunity in August 2019, the district court noted that the "particular diagnostic indicator [FibroSure result] that Plaintiff asserts demonstrates Allen's deliberate indifference was not actually before Allen." J.A. 87 (Op., Aug. 22, 2019, at 11). And because the FibroSure results were not before him, Dr. Allen lacked the subjective knowledge necessary to be held deliberately indifferent in his

personal capacity, even assuming that the FibroSure results would have been outcome-determinative (which Bernier does not allege).

In response to this defect in pleading that resulted in the grant of qualified immunity on the first amended complaint, Bernier proposed a second amended complaint that simply added the allegation identified by the court as absent from the first amended complaint. In the proposed complaint, Bernier altered his earlier allegation to assert that in denying his application for treatment with Harvoni, "Defendant Allen and the Clinical Director disregarded the Plaintiffs Fibrosure test results from 2012, 2014 and early 2015, of which both were aware, indicating cirrhosis." J.A. 111-112 (Second Am. Compl. ¶ 21) (emphasis added). The first amended complaint had alleged only that the BOP Clinical Director was aware of the Fibrosure results. J.A. 41-42 (First Am. Compl. ¶ 21).

The phrase "of which both were aware" – now including Dr. Allen – is stark and conclusory. The second amended complaint includes no other allegation to support the "easy to allege and hard to disprove" allegation that Dr. Allen was subjectively aware of the FibroSure results, and as explained above, the application that Bernier attached to his complaint indicates to the contrary. Of course, it is conceivable in a different factual world that Bernier could allege additional facts about Dr. Allen's knowledge of the FibroSure results – say, that Dr. Allen told him he had discussed the FibroSure results with the Clinical Director or that there was

27

some document in Dr. Allen's possession referring to those results. In that alternative world, Bernier would be able to allege Dr. Allen's subjective awareness in a non-conclusory way, notwithstanding the absence of information about the FibroSure results in the application attached to his complaint. But that is not the reality we are dealing with here. Nothing in the second amended complaint supports Bernier's conclusory allegation of subjective awareness, and the lack of subjective awareness is confirmed by the absence of information about FibroSure from the application before Dr. Allen.

The district court nevertheless accepted Bernier's allegation about Dr. Allen's subjective awareness of the FibroSure results, citing the Supreme Court's per curiam opinion in Erickson v. Pardus, 551 U.S. 89 (2007), in which the Court read a complaint's allegations liberally because "petitioner has been proceeding, from the litigation's outset, without counsel." Id. at 94. See J.A. 101 n.5 (Op., July 20, 2020, at 13 n.5). Here, in contrast, Bernier has counsel from a prominent D.C. law firm. In any event, the Court's subsequent decision in Iqbal makes the requirement of non-conclusory pleading even clearer than when the Court decided Erickson, particularly in the context of qualified immunity.

Reading Bernier's allegations liberally, as if he were pro se, the district court concluded that if Dr. Allen had "considered Plaintiff's Fibrosure results, it is plausible that Plaintiff would have qualified for treatment under Priority 1 – the

28

'highest priority of treatment' in the BOP's protocol." J.A. 101 (Op., July 20, 2020, at 13); see also J.A. 148 (Op., Feb. 8, 2021, at 3). The district court's analysis, however, skipped lightly over the conclusory nature of Bernier's allegation. It is not enough for Bernier to make the conclusory assertion that Dr. Allen subjectively was "aware" of the FibroSure results from Bernier's time in state prison. Dr. Allen's subjective awareness is a matter that Bernier could not conceivably have personal knowledge of, unless there was an objective, factual basis for alleging that knowledge, which Bernier does not plead. The thrust of Iqbal is that a plaintiff cannot make wild and unsupported allegations to plead a claim, particularly a claim that requires subjective knowledge on the part of the defendant.[6] Bernier failed to meet this requirement.

b.      Even if Bernier's conclusory allegation about Dr. Allen's subjective awareness were plausible under Iqbal, and he was subjectively aware of the earlier FibroSure results, it is not clearly established that Dr. Allen's denial of treatment with Harvoni violated the Eighth Amendment. To begin with, as the district court recognized, Bernier never actually alleges that he was entitled to a higher priority

---

[6]   See, e.g., Losey v. Warden, 521 Fed. Appx. 717, 719 (11th Cir. 2013) ("Mr. Losey's allegations that Warden Thompson had subjective knowledge that he was misclassified are entirely conclusory and are therefore not afforded the presumption of truth absent some factual support that make them plausible") (citing Iqbal, 556 U.S. at 679).

based on the FibroSure results. J.A. 101 n.5 (Op., July 20, 2020, at 13 n.5) ("Plaintiff does not expressly argue that he was entitled to a higher priority level based on his Fibrosure test results"). Instead, the district court simply "grant[ed] Plaintiff the benefit of the doubt that Defendant was on notice that a higher priority treatment category was required." Id. And as Bernier himself acknowledges, J.A. 109 (Second Am. Compl. ¶ 12), FibroSure results are merely one of several indicators of cirrhosis of the liver. Those results would not ineluctably require treatment with Harvoni, even if Dr. Allen actually knew about them in Bernier's case. Bernier alleges that he was examined on August 24, 2015, shortly after his return to federal custody, and that "[a]s of the examination date, Plaintiff 'has not had any clinical symptoms of cirrhosis.'" J.A. 110 (Second Am. Compl. ¶ 16); see also J.A. 104 n.6 (Op., July 20, 2020, at 16 n.6). Neither established medical standards nor BOP policy required Dr. Allen to approve antiviral treatment in light of the Fibrosure results when the record also showed a more recent Aspartate-aminotransferase to Platelet Ratio Index score and an earlier liver biopsy that did not warrant such treatment under the protocol. The BOP protocol simply does not dictate how doctors must weigh conflicting results.

Thus, even if the allegation about Dr. Allen's awareness of the FibroSure results were plausible, it was not clearly established that a medical judgment made on the basis of the facts alleged in the second amended complaint, in the face of

"'rapidly evolving'" medical knowledge, J.A. 85 (Op., Aug. 22, 2019, at 9), would violate the Eighth Amendment. See, e.g., Campbell v. Kallas, 936 F.3d 536, 548 (7th Cir. 2019) ("In a deliberate-indifference case challenging the medical judgment of prison healthcare professionals * * *, we necessarily evaluate those discrete treatment decisions. And we defer to those decisions unless no minimally competent professional would have made them.") (emphasis and quotation marks omitted).

As the Supreme Court explained in Estelle v. Gamble, 429 U.S. at 107, "the question whether * * * additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment." See also Anderson v. District of Columbia, 810 Fed. Appx. 4, 6 (D.C. Cir. 2020) ("The complaint alleges no grounds to doubt that Dr. Adewale's decision to forego psychotropic medication for other 'forms of treatment' was a 'matter for medical judgment.'") (quoting Estelle, 429 U.S. at 107); Barr v. Pearson, 909 F.3d 919, 921 (8th Cir. 2018) ("while inmates have a right to adequate medical care, they have no 'right to receive a particular or requested course of treatment'") (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) ("Mr. Johnson's complaint amounts to a difference of opinion with the medical staff, which does not rise to the level of a constitutional violation.").

In short, "[p]hysicians are entitled to exercise their medical judgment." White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988); Morrison v. Federal Bureau of Prisons,

No. 19-cv-1838, 2021 WL 1209210, at *4 (D.D.C. Mar. 30, 2021) ("Morrison's disagreements with the medical judgments underlying both the refusal to provide him CoQ10 and the treatment provided for his Repatha-related side effects are thus insufficient to show that BOP officials were deliberately indifferent to his medical needs."). The district court erred in denying qualified immunity to Dr. Allen and allowing Bernier to proceed on his second amended complaint.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated and the case remanded with instructions to grant qualified immunity to Dr. Allen and to dismiss the second amended complaint with prejudice.

Respectfully submitted,

BRIAN M. BOYNTON
 Acting Assistant Attorney General

BARBARA L. HERWIG
 (202) 514-5425
EDWARD HIMMELFARB
 (202) 514-3547
 Attorneys, Appellate Staff
 Civil Division, Room 7541
 Department of Justice
 950 Pennsylvania Ave., N.W.
 Washington, D.C. 20530

AUGUST 2021

# CERTIFICATE OF COMPLIANCE

I certify that this brief is proportionately spaced, using Times New Roman, 14 point font. Based on a word count under Microsoft Word 2016, this brief contains 7,701 words, including the footnotes, but excluding the tables, certificates, glossary, and any addenda.

/s/     Edward Himmelfarb

_____
Edward Himmelfarb
Attorney for the Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2021, I served the foregoing Brief for the

Appellant on the following by filing it through the CM/ECF system:

Theodore A. Howard
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC 20006


/s/ Edward Himmelfarb

_____

Edward Himmelfarb
Attorney for the Appellant